*1318 OPINION.
Love:
In passing upon the question as to whether or not the amounts appearing on the books to the credit of the various stock-holders should be included in the invested capital of the petitioner, it is necessary to examine into the character of the account and to determine whether the amounts thus entered were the property of the petitioner or the property of the stockholders, or whether the amounts were so held by the petitioner as to be ostensibly the property of the petitioner. Numerous court decisions have been rendered and numerous decisions by the Board have been promulgated on circumstances somewhat similar. An examination of those decisions shows that no definite or fixed rule is set forth thereby which would apply in all cases. Each case has its own peculiarities and the circumstances in each case govern in making the decisions. The petitioner relied upon the decision in the case of Eisner v. Macomber, 252 U. S. 189; Davidson & Case Lumber Co. v. Motter, 14 Fed. (2d) 137; Eaton v. English & Mersick Co., 1 Fed. (2d) 54; Flynn v. Haas *1319 Bros., 20 Fed. (2d) 510. Practically all of these cases dealt with the question of whether or not a dividend had been declared, and whether if declared, such dividend had been available in cash and set aside for the benefit of the stockholders, the main point being whether or not it had passed out of the control and ownership of the corporation.
The respondent relied upon the case of Spencer v. Lowe, 198 Fed. 161, and upon the following decisions by this Board: Greenfield Bros. Clothing Co., 9 B. T. A. 9; Kelly-Buckley Co., 1 B. T. A. 1165; O’Neil Construction Co., 4 B. T. A. 401; Lobsitz Hardware Co., 5 B. T. A. 295; H. H. Hornfeck & Son, Inc., 3 B. T. A. 1165; Electrical Supply Co., 1 B. T. A. 658; J. S Carroll Mercantile Co., 7 B. T. A. 1157. In Feick & Sons Co. v. Blair, 26 Fed. (2d) 540, a father and two sons owned the stock of a corporation. An oral agreement entered into between them provided that the salaries allowed the sons in excess of $20 per week for one, and $25 a week for the other, should remain in the business, that the father should not draw any salary, and that all dividends were to remain in the business. The corporation kept personal accounts of each of the individuals, and the shares of the surplus, dividends, and the portions of the salaries that remained in the business were credited to each of the individuals. Under the agreement the stockholders were not permitted to withdraw any money from the business except the portions of the salaries indicated. They had no control of the money placed to their account and could not withdraw it from the corporation under the terms of their agreement, and all of the stockholders were in practically the same situation. Therefore, the court held that the accumulated salaries were not different in character from the accumulated dividends, and that the accumulation of both dividends and salaries should be treated as an invested capital and not borrowed money. To the contrary see Southport Mill, Ltd., v. Commissioner, 6 B. T. A. 1073, affirmed in 26 Fed. (2d) 17, by the United States Circuit Court of Appeals for the Fifth Circuit, June 7, 1928.
We think the case of Feick & Sons Co., supra, is not in point here. In this case there was no prohibition against withdrawals by the stockljplders. Any stockholder was entitled to withdraw from the corporation against the amounts credited to him, and this was done. Some of the stockholders drew considerably more than others, and occasions arose when the balance at the end of the year for at least one of the stockholders was less than zero. In other words, the stockholder had drawn from the corporation money in excess of the account standing in his name. This occurred in the case of Henry Schmidt, December 31, 1910, and again December 31, 1917, and again December 31, 1919. The credit balances of the stockholders, all of whom were equal owners of the stock, were far from *1320 uniform in other years. For instance, in the year 1918, Casper Schmidt had a credit balance of $19,360.89, whereas, Henry Schmidt had a balance of only $1,403.56. This would indicate that the stockholders were in practical control of the balances credited to their accounts.
On the occasions when one stockholder had withdrawn his entire balance, there appears to have been no objection on the part of the other stockholders or the corporation, nor was there any liability set up in the account except in so far as such account was overdrawn. Under the arrangement all stockholders could have made similar withdrawals from their accounts.
It has been shown in the statement of facts that $300,000 par value of stock was issued in 1917. This stock was paid for by debiting the stockholders’ balances with $50,000 each. In this transaction it is apparent that the corporation did not consider that it was making a stock dividend, but was actually selling for cash to its stockholders the additional stock. The debiting of the account of Henry Schmidt in this transaction resulted in a deficit in his account of $6,299.25. Such a deficit, of course, would not have occurred if the stock was paid out as a stock dividend. There appears to be no controversy in respect to this $300,000 of capital stock, and apparently it has been included in invested capital.
The circumstances in this case place it in an entirely different class from the cases cited by the petitioner in that the accounts are made up of salaries, shares of trustees’ income, amounts inherited from the estate of Casper Schmidt, dividends, and allocated undivided profits. The amounts credited to the various stockholders were available to the extent that on some occasions the entire balance of at least one stockholder was withdrawn by him, and other stockholders had withdrawn the major portion of their accounts. On two occasions it appears that the stockholders, acting together as stockholders, agreed upon the withdrawal of certain sums without the formality of the declaration of a dividend by the directors.
From all of these facts it would appear that the corporation itself considered the stockholders’ balances as being the property of the stockholders. The stockholders themselves appeared to hav§^ complete control of such balances. If it is possible for one of the stockholders to withdraw his entire balance it would seem to be in the power of any of the others to do likewise. We, therefore, are of the opinion that the sums placed to the credit of the various stockholders Avere not the property of the corporation, and accordingly, can not be included in invested capital of the corporation.
The petitioner has claimed that its invested capital should be increased because of undervaluation of its assets, and has endeavored to base such increase upon a current appraisal made in 1915.
*1321 Section 326 of the Revenue Act of 1918 defines invested capital as:
(1) Actual cash bona fide paid in for stock or shares;
(2) Actual cash value of tangible property, other than cash, bona fide paid in for stock or shares, * * *
(3) Paid-in or earned surplus and undivided profits; not including surplus and undivided profits earned during the year.
* * * * # * *
We have to deal here with the third provision since the expenditures made on plant and equipment occurred several years after the date of organization, and the payments were made out of surplus. From the evidence submitted it is apparent that during the years when the plant was being constructed and the land being prepared many expenditures were made which properly should have been classed as capital expenditures but which were charged to expense. These expenditures extended over a period of some six years during the construction of the plant, and in later years in the construction of machinery. The petitioner has not endeavored to show what these expenditures were in the years when made. The appraisals of 1908 and 1915 do not contain sufficient information to enable us to determine the actual expenditures of this nature that were made in the various years. The value of the property in 1915 or in 1908 is immaterial, and is of no assistance in determining the cost of the assets. The action of the Commissioner in excluding from invested capital the amount claimed by the petitioner is, therefore, sustained.

Judgment will be entered for the respondent.